**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:20-cv-02643-RM-SKC

STEVE RUIZ, on behalf of himself and all others similarly situated;
ADAM MOREHEAD, on behalf of himself and all others similarly situated,

    Plaintiffs,

v.

THE COLORADO DEPARTMENT OF CORRECTIONS;
DAVID JOHNSON, in his official capacity;
DEAN WILLIAMS, in his official capacity,

    Defendants.

---

**PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION OF
FAIR LABOR STANDARDS ACT CLAIM**

---

Plaintiffs Steve Ruiz and Adam Morehead ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, Leventhal Lewis Kuhn Taylor Swan PC and Finger Law PC, submit their Motion for Conditional Certification of Fair Labor Standards Act Claim ("Motion") as follows:

**CERTIFICATION OF CONFERRAL**

In accordance with D.C.COLO.LCivR 7.1, the undersigned certifies he conferred with counsel for Defendants the Colorado Department of Corrections (the "CDOC"), David Johnson, and Dean Williams (collectively "Defendants") concerning the relief requested in this Motion. Defendants oppose it.

## INTRODUCTION

The CDOC operates Colorado's prisons and, through the CDOC's Adult Parole Division, supervises community-based inmates and parolees. The CDOC employs Parole Officers throughout the State of Colorado. The CDOC classifies Parole Officers as either Community Parole Officer I or Community Parole Officer II. The Community Parole Officer II position is one level above a Community Parole Officer I. These Parole Officers may serve as a team lead. However, the job duties in this position do not include any supervisory authority, and both the I and II level employees are classified as non-exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. Other than the team leader aspect, the essential job duties of Community Parole Officers I and II are the same.

Parole Officers' salaries and overtime rates are determined by pay ranges established by the State of Colorado. Parole Officers frequently work in excess of forty (40) hours per workweek. In addition to the typical forty (40) hours per workweek, Parole Officers were frequently designated as "on call." The on-call designation was not always voluntary. During the on-call period, Parole Officers were required to respond to CDOC dispatch calls at all times for an entire week. The on-call period began on Friday at 5 p.m. and ended the following Friday at 8 a.m. During this on-call time, Parole Officers were required to promptly respond to frequent calls, many of which required travel to meet with parolees under their supervision. This overtime was spent primarily in performing the duties of the Electronic Monitoring Response Team ("EMRT") whose purpose was to facilitate constant monitoring and to respond to issues involving parolees.

During Parole Officers' EMRT shifts, CDOC paid them a rate of only $2.00 per hour for on-call time. When a Parole Officer was contacted to perform work during an EMRT shift, the

Parole Officer was compensated at his or her regular rate for the first eighty (80) hours worked in a two-week period and a rate of 1.5 times the Parole Officer's regular hourly rate for hours worked beyond eighty (80) hours in a two-week period.

While Parole Officers were on EMRT duty, the CDOC's Parole Command Post notified them of EMRT alerts by calling Parole Officers' CDOC-issued cell phone and with an email to the Parole Officers' CDOC email account. If the CDOC's Parole Command Post was unable to contact the Parole Officer, the Command Post would attempt to make contact via the Parole Officer's personal cell phone. When Parole Officers were on call, their activities were significantly restricted; they could not refuse any call and were required to report immediately as directed.

The EMRT program was in place from 2017 through its termination on or about December 31, 2020 after this action commenced. Parole Officers regularly worked more than forty (40) hours per workweek but did not receive required overtime compensation for that work, systematically depriving them of earned wages in violation of the FLSA.

Plaintiffs now seek conditional certification of their FLSA claim and authorization to send court-approved notice to all members of the collective. Plaintiffs seek to certify a collective of all Parole Officers who were classified as non-exempt and who worked for the CDOC at any time between May 19, 2017 and December 31, 2020 plus any period of tolling through the entry of judgment in this case. As set out below, Plaintiffs easily cross the low hurdle for conditional certification which requires nothing more than "substantial *allegations* that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (emphasis added). Accordingly, this Court should conditionally certify this collective and order notice be sent to, and posted for, the collective.

Without prompt notice and an opportunity to join this case, these Parole Officers' claims will erode under the FLSA's statute of limitations.

## FACTUAL BACKGROUND

Plaintiffs set forth the following "substantial allegations" required for conditional certification under Section § 216(b) of the FLSA:[1]

1. The CDOC employs many Parole Officers throughout the State of Colorado. *See* Declaration of Steve Ruiz, ¶ 4, attached as Exhibit 1; Declaration of Adam Morehead, ¶ 4, attached as Exhibit 2.

2. Plaintiff Steve Ruiz worked as a Parole Officer for the CDOC from on or about May 18, 1987 until his retirement in 2020. *See* Exh. 1, ¶ 1.

3. Plaintiff Adam Morehead has worked as a Parole Officer from on or about November 1, 1997 through the present. *See* Exh. 2, ¶ 1.

4. Like other Parole Officers, Plaintiffs were responsible for specified job duties including overseeing the compliance of community-based inmates and parolees with employment and with drug and alcohol requirements. *See* Exh. 1; ¶¶ 6, 7; Exh. 2, ¶¶ 6, 7.

5. CDOC Parole Officers performed the same material job duties which included, among other things overseeing the compliance of certain community-based inmates and parolees with employment and with drug and alcohol requirements; and responding to EMRT alerts during on-call periods. *See* Exh. 1; ¶¶ 6, 7; Exh. 2, ¶¶ 6, 7.

---

[1] Unlike in the context of dispositive motions practice, there is no requirement these facts be uncontroverted. The facts alleged by a plaintiff must be accepted as true when ruling on a motion for conditional certification. *See Thiessen*, 267 F.3d at 1102.

6. Parole Officers frequently worked over forty (40) hours per workweek. *See* Exh. 1, ¶¶ 12, 13; Exh. 2, ¶¶ 12, 13. For example, Plaintiff Steve Ruiz worked over eighty (80) hours during the workweek beginning on June 1, 2018. *See* Exh. 1, ¶ 12. Plaintiff Adam Morehead worked over ninety (90) hours during the workweek beginning on June 15, 2018. *See* Exh. 2, ¶ 12.

7. The CDOC classifies Parole Officers as non-exempt from the overtime requirements of the FLSA and pays the Parole Officers at a rate of 1.5 times their hourly rate for hours worked in excess of eighty (80) hours in a two-week period. *See* Exh. 1, ¶ 14; Exh. 2, ¶ 15.

8. Parole Officers were compensated at a rate of $2.00 per hour of on-call time. *See* Exh. 1, ¶ 13; Exh. 2, ¶ 14.

9. The CDOC's managers aware of the number of hours Parole Officers worked because they often required Parole Officers to work on-call shifts. *See* Exh. 1, ¶ 15; Exh. 2, ¶ 16. This work required Parole Officers to be available for twenty-four (24) hours each day for an entire week. *See* Exh. 1, ¶ 12; Exh. 2, ¶ 13.

10. On May 19, 2020, Plaintiffs filed their Complaint in the instant case alleging, *inter alia*, that salaried Parole Officers were affected by the same illegal pay policy—specifically, the CDOC's failure to compensate Parole Officers at the overtime pay rates required by the FLSA. *See* Doc. No. 1. Plaintiffs bring the action as a collective action pursuant to Section § 216(b) of the FLSA on behalf of themselves and all other similarly situated Parole Officers. *See id.*

## ARGUMENT

### I. OVERVIEW OF THE FLSA AND THE LENIENT FIRST STEP OF THE TWO-TIER FLSA CERTIFICATION ANALYSIS.

The purpose of the FLSA is to eliminate unfair labor practices because their existence "burdens commerce and the free flow of goods," "constitutes an unfair method of competition,"

and "leads to labor disputes." 29 U.S.C. § 202(a), (b). To further these policies, the FLSA requires employers to pay their non-exempt employees straight-time compensation of not less than $7.25 per hour and overtime compensation at a rate of one-and-one-half the employees' regular rates of pay for all hours worked in excess of forty (40) per workweek. *See* 29 U.S.C. §§ 206, 207(a)(1).

The FLSA provides a right of action for employees to recover damages for violations of the overtime provision and further empowers them to pursue claims on a collective basis on behalf of similarly situated employees. 29 U.S.C. § 216(b) specifically provides:

> An action to recover the liability prescribed in [§§ 206 or 207] may be maintained against any employer … in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

FLSA certification is a two-stage process in the Tenth Circuit. *See Thiessen*, 267 F.3d at 1105. The first is a "notice stage" where courts use a "fairly lenient standard to determine whether plaintiffs are similarly situated for purposes of sending notice to putative class members." *Gassel v. Am. Pizza Partners, L.P.*, 2015 U.S. Dist. LEXIS 119982, *7 (D. Colo. Sept. 8, 2015). "The 'similarly situated' standard is considerably less stringent than Rule 23(b)(3) class action standards," *Avendano v. Averus, Inc.*, 2015 U.S. Dist. LEXIS 42223, *10-11 (D. Colo. Mar. 31, 2015), and "typically results in conditional certification of a representative class." *Daugherty v. Encana Oil Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1133 (D. Colo. 2011).

First-stage certification requires nothing more than "substantial allegations" that the "putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. Where putative collective members are employed in similar positions, the allegation that defendant engaged in a pattern or practice of not complying with the FLSA is

6

sufficient to meet this burden. *See Gipson v. Southwestern Bell Tel. Co.*, 2009 U.S. Dist. LEXIS 33478, \*11-12 (D. Kan. April 20, 2009); *see also Daugherty*, 838 F. Supp. 2d at 1133 (Plaintiff need only allege a "reasonable basis" for his claim that there are other similarly situated employees); *Bass v. PJComn Acquisition Corp.*, 2010 U.S. Dist. LEXIS 144305, \*4 (D. Colo. Sept. 15, 2010) ("Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members") (*quoting Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)).

Indeed, "[t]he burden in this preliminary certification is light because the risk of error is insignificant: should further discovery reveal that the named positions, or corresponding claims, are not substantially similar the defendants will challenge the certification." *Craig v. Rite Aid Corp.*, 2009 U.S. Dist. LEXIS 114785, \*9 (M.D. Pa. Dec. 9, 2009). "To impose a strict standard of proof would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the FLSA." *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991).

Once a court conditionally certifies a collective, putative members of the collective are given notice and the opportunity to "opt in" to the action. *See Bass*, 2010 U.S. Dist. LEXIS 144305, \*5-7. Unlike Fed. R. Civ. P. 23 class actions, however, a person does not become a member of the FLSA collective, and his or her statute of limitations is not automatically tolled, until he or she files a consent to be a part of the action. *See Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989). After notice is sent and discovery is completed, the Court may consider second-stage certification, which often arises in the context of a defense motion to decertify the collective.

7

*See Daugherty*, 838 F. Supp. 2d at 1133. During this second stage, the Court applies a somewhat stricter standard to determine whether the case can proceed on a collective basis. *Id*.

## II. PLAINTIFFS EASILY MEET THE MODEST FACTUAL SHOWING REQUIRED FOR FIRST STAGE CONDITIONAL CERTIFICATION.

This Motion seeks first stage certification of a narrowly-tailored collective: Parole Officers who were employed by the CDOC between May 19, 2017 and December 31, 2020 plus any period of tolling. As set forth in the attached sworn declarations, all of these individuals performed the same material job duties, were subject to the same unlawful policies that failed to properly account for compensable work, and routinely worked more than forty (40) hours per workweek. As a result of the CDOC's unlawful policies, Plaintiffs allege that they and other Parole Officers performed overtime work without the compensation required by the FLSA.

At this early stage of the litigation, Plaintiffs' allegations and declaration testimony constitute (at least) the modest factual showing that Parole Officers were subject to a common policy or practice designed to deny them overtime compensation. This evidence is sufficient for conditional collective certification in the Tenth Circuit. *See Boldozier v. Am. Fam. Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092-93 (D. Colo. 2005) (holding that certification of vehicle property damage claim adjusters' proposed collective action under the FLSA was warranted where named plaintiffs submitted declarations asserting that all vehicle physical damage claims representatives, regardless of where they worked and whatever their specific job titles were, had the same job functions and that the employer treated them all as categorically exempt from FLSA's overtime requirements); *Daugherty*, 838 F. Supp. 2d at 1132-33 (holding that allegations in complaint supported by affidavit was sufficient under the lenient standard for FLSA collective certification).

Accordingly, this Court should conditionally certify a collective of Parole Officers employed by CDOC between May 19, 2017 and December 31, 2020 plus any period of tolling.

## III.  THIS COURT SHOULD APPROVE THE PROPOSED NOTICE AND CONSENT FORM.

This Court has discretion to facilitate notice to potential collective members by authorizing judicial notice of the collective action. *See Hoffmann-LaRoche Inc.*, 493 U.S. at 170. Notice to prospective collective members "represents not an official communication from the Court but is instead a communication from the plaintiff and plaintiffs' counsel to other prospective class members." *King v. ITT Cont. Baking Co.*, 1986 U.S. Dist. LEXIS 29321, *7 (N.D. Ill. Feb. 18, 1986). "The Court has both the power and duty to ensure fair and accurate notice, [but] that power should not be used to alter plaintiffs' proposed notice unless such alternation is necessary." *Heitmann v. City of Chicago*, 2004 U.S. Dist. LEXIS, *10 (N.D. Ill. July 30, 2004).

Here, Plaintiffs request the Court approve notice in the form attached as Exhibit 3 to be sent to a putative collective defined as follows:

> All current and former Parole Officers who are or who were employed by the CDOC between May 19, 2017 and December 31, 2020 plus any period of tolling.

Plaintiffs request the Court authorize them to send notice and a reminder to affected employees at their last known mailing and email addresses. *See Struck v. PNC Bank N.A.*, 2013 U.S. Dist. LEXIS 19444, *22 (S.D. Ohio Feb. 13, 2013) (ordering notice be sent via mail and email because "[t]he addresses on file [with the defendant] for these individuals may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive [notice]."); *Kelly v. Bank of Am., N.A.*, 2011 U.S. Dist. LEXIS 157763, *4 (N.D. Ill. Sept. 23, 2011) (approving notice via mail and email).

9

Furthermore, Plaintiffs request this Court order the CDOC to conspicuously post the notice at each worksite at which Parole Officers worked in an area readily and routinely available for review by Parole Officers. *See Oldenburg v. California Casualty Management Company*, 16-cv-01152-JLK-MEH (D. Colo. Feb. 23, 2017) (ordering employer to post notice at all of its locations "for the duration of the opt-in period."); *see also Romero v. Prod. Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006) (noting that defendant would face "only a small burden in being required to post the notice" and that "multiple district courts have approved this method of notice[.]").

In furtherance of issuing the notice, Plaintiffs also request this Court order the CDOC to produce the names, mailing addresses, dates of employment, job titles, job locations, phone numbers, and e-mail addresses of all potential members of the collective in an electronically readable format to facilitate notice to potential plaintiffs of the pending lawsuit. Finally, Plaintiffs request the Court order a ninety (90)-day notice period.

## IV.    THE COURT SHOULD EQUITABLY TOLL THE STATUTE OF LIMITATIONS.

The FLSA has a two-year statute of limitations that extends to three years when the employer's violations are willful. *See* 29 U.S.C. § 255(a). The statute of limitations, however, is not necessarily tolled when the representative action is filed. Rather, the statute of limitations for each individual's claim only tolls upon the filing of a consent form to join the action. *See* 29 U.S.C. § 256(b); *see also Stransky v. HealthOne of Denver, Inc.*, 868 F. Supp. 2d 1178, 1180 (D. Colo. 2012). In other words, collective action members' claims silently erode between the time Plaintiffs move to send notice to the collective and the filing of the respective consent forms.

In *Turner v. Chipotle Mexican Grill, Inc*., 123 F. Supp. 3d 1300 (D. Colo. 2015), Judge Kane recognized the injustice of a potential plaintiff's claim becoming time barred during the

10

notice period, and to remedy it, ordered equitable tolling. *See Turner*, 123 F. Supp. 3d at 1309; *see also Stransky*, 868 F. Supp. 2d at 1181 ("Equitable tolling is a doctrine that permits courts to extend statutes of limitations on a case-by-case basis in order to prevent inequity."); *Inniss v. Rocky Mountain Inventory, Inc.*, 18-cv-01475-WJM-KMT (D. Colo. Mar. 3, 2020) ("equitable tolling in circumstances such as these is appropriate given that the information needed for the named plaintiff to inform other employees of their opportunity to opt in is largely in the defendant's hands."). Plaintiffs move the Court for equitable tolling as of the date of filing.

This Court made clear in *Turner* that joinder in FLSA collective actions is "presumptive" and a "lenient" standard—one even more forgiving than joinder under the Federal Rules of Civil Procedure. 123 F. Supp. 3d at 1309. Yet briefing on the issue of conditional certification will inevitably cause a delay in notice being sent during the pendency of the briefing period and issuance of this Court's order on the Motion. The claims should, as the Court noted in *Turner*, "rise or fall on their merits[.]" *Id*. Accordingly, tolling is appropriate.

## CONCLUSION

The CDOC relied on the hard work of its non-exempt Parole Officers. It cannot, however, sit back and enjoy the fruits of this labor and at the same time refuse to pay for it. This is the exact unlawful conduct the FLSA was designed to prevent.

For these reasons, Plaintiffs seek this Court's Order (1) conditionally certifying a collective of all Parole Officers who were employed by the CDOC at any time between May 19, 2017 and December 31, 2020 plus any period of tolling; (2) appointing Plaintiffs to act as collective representatives; (3) appointing Paul F. Lewis, Michael D. Kuhn, Andrew E. Swan, Bill S. Finger, and Casey J. Leier as counsel for the collective; (4) directing the CDOC to produce the names,

mailing addresses, dates of employment, job title, job location, telephone numbers, and e-mail addresses of all putative members of the FLSA collective in an electronically readable format within fourteen (14) days; (5) approving notice to the collective members in the form attached as Exhibit 3, and allowing collective members ninety (90) days from mailing within which to return an opt-in form; and (6) directing the CDOC to prominently post the approved notice in each of its locations at which Parole Officers worked for the duration of the opt-in period.

Respectfully submitted this 10th day of December, 2021.

          /s/ Andrew E. Swan
Paul F. Lewis
Michael D. Kuhn
Andrew E. Swan
LEVENTHAL | LEWIS
KUHN TAYLOR SWAN PC
620 North Tejon Street, Suite 101
Colorado Springs, CO 80903
Telephone:   (719) 694-3000
Email:           plewis@ll.law
                     mkuhn@ll.law
                     aswan@ll.law

Bill S. Finger
Casey J. Leier
FINGER LAW PC
29025-D Upper Bear Creek Road
Evergreen, CO 80439
Telephone:   (303) 674-6955
Email:           bill@fingerlawpc.com
                     casey@fingerlawpc.com

*Attorneys for Plaintiffs*

12