IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02643-RM-SKC

STEVE RUIZ, on behalf of himself and all others similarly situated;
ADAM MOREHEAD, on behalf of himself and all others similarly situated,

      Plaintiffs,

v.

THE COLORADO DEPARTMENT OF CORRECTIONS,

      Defendant.

## JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND PRELIMINARY CERTIFICATION OF COLLECTIVE ACTION

The parties, by and through their respective counsel, jointly move the Court to preliminarily approve a settlement negotiated by Named Plaintiffs Steve Ruiz and Adam Morehead (collectively "Named Plaintiffs") and Defendant Colorado Department of Corrections ("DOC") and certify for purposes of settlement the proposed collective, all as set out below.

### Compliance With D.C.COLO.LCivR 7.1 (A)

The motion is unopposed. The parties bring this motion jointly.

### I.    INTRODUCTION

After nearly two years of litigation, Named Plaintiffs and the DOC reached a settlement of this collective action that creates a common fund worth up to $5 million plus the cost of settlement administration. The majority of this fund will be paid on

a *pro rata* basis to the estimated 297 current and former non-exempt community parole officer or team leads who may have worked Electronically Monitoring Response Team ("EMRT") shifts for the DOC between May 19, 2017 and December 31, 2020 (the "Collective").[1] This proposed settlement will resolve wage and hour claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq*.

The parties now seek preliminary approval of the Settlement Agreement ("Settlement") they reached on behalf of themselves and the Collective. A copy of the Settlement is attached as Exhibit 1.[2] The parties further move the Court to approve the proposed notice and plan for notifying the collective of the Settlement and appoint counsel from Leventhal Lewis Kuhn Taylor Swan PC and Finger Law, P.C. as counsel for the Collective ("Collective Counsel").

Named Plaintiffs and their counsel believe the Settlement — negotiated at arm's length after the exchange of thousands of pages of discovery — is a fair and comprehensive resolution of the alleged claims considering the risks inherent in litigation. Collective Counsel estimate this Settlement represents 94.45% of the two-year unliquidated damages for the entire Collective. Accordingly, the parties respectfully request that the Court preliminarily approve the Settlement.

---

[1] Not all such parole officers and team leads worked EMRT shifts.
[2] Although the parties have agreed to all terms of the Settlement, the agreement has not yet been signed. In order for a state official to sign the settlement, debt checks must first be completed to confirm a recipient of state funds does not owe a debt to the state. The parties anticipate that they will complete debt checks after the opt in process and before final approval.

## II. SUMMARY OF LITIGATION

### A. Facts

DOC's Division of Adult Parole exists to manage and supervise offenders, ensure public safety when inmates are released early, and provide opportunities for successful re-entry of offenders returning to the community. The Division of Adult Parole has 19 parole offices throughout the state.

Named Plaintiff Steve Ruiz, was a former parole officer. Named Plaintiff Adam Morehead continues to work as a team lead parole officer. During the relevant period of May 19, 2017 to December 31, 2020, DOC employed 297 current and former parole officers and team leads who the parties believe satisfy the definition of the Collective.

Parole officers are responsible for responding to alerts transmitted by electronic monitoring devices worn by offenders. These alerts range from minor, such as the device having a low battery, to more serious, including that the offender is tampering with the strap on the device. An offender's assigned parole officer is responsible for responding to and "clearing," or resolving, electronic monitoring alerts received during business hours. Prior to January 2021, alerts and responses during non-business hours were handled and cleared by parole officers who were on-call as part of the EMRT program. Parole officers who worked on call were FLSA non-exempt. DOC paid on-call officers at the correct rate for time spent responding to electronic monitoring alerts but at a rate of $2.00 per hour for all other time on call. DOC eliminated the on-call work of the EMRT program on December 31, 2020.

3

Named Plaintiffs allege that they and Collective were entitled to receive overtime pay for the time they were on call but not responding to an electronic monitoring alert. DOC denies that its parole officers were paid other than as required by law and has asserted other legal defenses, including sovereign immunity.

B.   **Procedural History**

On May 19, 2020, Named Plaintiffs filed a collective action lawsuit against DOC captioned *Ruiz et al. v. Colo. Dep. of Corrections et al.,* Case No. 2020CV31723 (Denver District Court). On August 21, 2020, the DOC removed the case to this Court.

DOC filed its Answer on October 6, 2020, and the parties moved into extensive informal discovery. DOC did not have an existing report or database that would show information necessary to calculate liability and damages, such as the number of electronic monitoring alerts handled by each parole officer or the amount of time parole officers spent responding to alerts. Obtaining this information required cross-referencing four different reports and creating an Excel spreadsheet database. To avoid this extremely laborious and costly process, the Court approved an "exemplar" approach to streamline discovery that included jointly selecting parole officers and time periods to represent snapshots of work performed by parole offices throughout the state during the limitations period. Even with this exemplar approach, DOC produced tens of thousands of pages of discovery to Collective Counsel.

On December 16, 2021, the parties participated in a mediation with Adrienne Fechter of Fechter Mediation & Arbitration Services, LLC, an experienced

employment law mediator. At that mediation, the parties agreed to the terms of the Settlement. The Settlement resolves all claims for participating members of the Collective for their on-call work performed as part of the EMRT program between May 19, 2017 and December 31, 2020.

Collective Counsel have fully analyzed and evaluated the claims and DOC's defenses. In doing so, Collective Counsel reviewed thousands of pages of documents, including DOC's pay and timekeeping records; employment rosters; data about the nature of after-hours electronic monitoring alerts forwarded to on-call parole officers for response; and DOC policies with respect to compensation. Collective Counsel performed hundreds of hours of analysis of these and other documents. Named Plaintiffs and their counsel, after considering the foregoing and the substantial risks of litigation, are satisfied that the terms of this Settlement are fair, reasonable, adequate, equitable, and that the Settlement is in the best interest of the Collective.

DOC denies any wrongdoing but desires to resolve the case on the terms stated in the Settlement to avoid further expense, inconvenience, and interference with its ongoing business operations. DOC thus believes the Settlement in its best interests.

### III. TERMS OF THE PROPOSED SETTLEMENT

#### A. The Proposed Settlement Collective

The proposed settlement collective is comprised of all non-exempt community parole officers and community parole team leads who may have worked EMRT shifts for the DOC for DOC from May 19, 2017 through December 31, 2020.

5

B.  **Relief to the Collective**

Pursuant to the Settlement, DOC will pay the sum of $5,000,000 ("Settlement Payment"). The Settlement Payment is inclusive of all wages, damages, liquidated damages, attorneys' fees, and costs. In addition to the Settlement Payment, DOC will pay administration expenses for the settlement administrator, Rust Consulting, or such administrator approved by the Court (the "Administrator").

C.  **Settlement Notice and Claim and Exclusion Procedure**

The parties seek approval of the notice and claim form ("Notice") attached as Exhibit 2. The Notice includes each Collective Member's estimated share of the Settlement Amount based on the pro rata formula prescribed in the Settlement Agreement. That formula calculates the estimated payment based on the payroll and timekeeping records produced by the DOC.

Within 14 calendar days after preliminary approval of the Settlement, the Administrator will send the Notice to the Collective. This Notice will be sent by first class postage-prepaid mail with forwarding address correction requested to the last known address and email of each member of the Collective.

Members of the Collective must submit a Claim Form to receive an award under the Settlement. If Collective member previously filed a consent to sue in this case and does not want to participate in the Settlement, he or she may file an Opt-Out form, which will also be attached to the Notice. To be valid, an Opt-Out Form or

Claim Form must be received by the Settlement Administrator within 49 days after the date such documents are transmitted to the Collective Members.

The Administrator will provide a summary of the claims within 63 days of closure of the notice period. Within 63 days of the Administrator's summary, the parties will file a Motion for Final Approval of the Settlement, which will include a final calculation of how the Settlement Payment will be distributed. The parties will also request that the Court schedule a fairness hearing, at which time Collective Counsel will address the reasonableness of attorneys' fees and costs.

The Settlement Payment will be the maximum payment from DOC, inclusive of costs and attorneys' fees. Depending on whether the Collective Member is a past or current employee, DOC or the State Risk Manager shall deduct from such payment appropriate federal, state, and other applicable withholdings related to unpaid wages or backpay. Collective Members who opt in as well as Collective Counsel will submit W-4 and/or W-9 forms to the Administrator which will then forward them to DOC.

The Settlement may be voided by DOC if putative Collective Members who have claims for wages exceeding $500,000, in total, or more opt out or fail to opt in.

Named Plaintiffs will execute a mutual release of all claims, known or unknown. By endorsing their settlement checks, participating Collective Members will release DOC from all wage-and-hour claims and agree to be bound by the Settlement. Upon transmittal of the Settlement Payment to the Collective, Named Plaintiffs will file a dismissal with prejudice of all claims against all parties. Aside

from any awarded reasonable attorneys' fees and costs which will be deducted from the common fund, the parties shall each bear their own attorneys' fees and costs.

## II. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

This Court requires approval of FLSA settlements. *See Judd v. Keypoint Gov't Sols., Inc.*, 18-CV-00327-RM-STV, 2021 WL 75224, at *2, n.7 (D. Colo. Jan. 8, 2021). Approval should be granted when the proposed settlement is: (1) a result of a bona fide dispute; (2) fair and equitable to all parties concerned; and (3) contains a reasonable award of attorneys' fees. *Id.* at *2.

### A. The Proposed Settlement was the Result of a Bona Fide Dispute.

To establish the existence of a bona fide dispute, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed; (3) the employer's reasons for disputing the employees' right to overtime; (4) the employees' justification for the disputed wages; and (5) each party's estimate of the number of hours worked and the applicable wage. *See Baker v. Vail Resorts Mgmt. Co.,* Case No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *2 (D. Colo. Feb. 24, 2014).

Here, the parties have described the nature of the dispute, DOC's business, and the nature of the work performed by parole officers in section II, *supra*. With regard to the remaining factors, the parties dispute whether parole officers are entitled to compensation for their on-call time in addition to the compensation paid for time spent actually working during each on-call shift.

In determining whether on-call time is compensable, the relevant inquiry is "whether an employee is 'engaged to wait' or 'wait[ing] to be engaged' … or, alternatively, whether on-call time is spent predominantly for the benefit of the employer or the employee….'" *Pabst v. Oklahoma Gas & Electric Co.,* 228 F.3d 1128, 1132 (10th Cir. 2000) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 137 (1944)). If an employee is engaged to wait, then the time is compensable. *Price v. Public Service Co.,* 180 F. Supp. 3d 893, 901 n.2 (N.D. Okla. 2013).

DOC's position is that the parole officers were waiting to be engaged, *i.e.* that their on-call time was not spent primarily for the benefit of DOC. Named Plaintiffs, however, believe that their on-call time was spent primarily for DOC's benefit and that there were significant restrictions placed on their personal time while on call. While the parties dispute whether the on-call time is compensable, they agree upon the computation of wages owed assuming the compensability of that time.

**B.     The Settlement is Fair and Equitable to All Parties.**

A FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales. Courts in the Tenth Circuit consider the following factors when deciding whether to approve a collective action settlement: (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the

mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *See Baker*, 2014 WL 700096, at *2.

1. **The Proposed Settlement Was Fairly and Honestly Negotiated.**

The proposed Settlement was the result of extensive, arm's-length negotiations involving experienced counsel who are well-versed in wage and hour law, collective action litigation procedures, and the legal and factual issues of this case. The Settlement was further brokered by an experienced employment law mediator with particular background in FLSA class cases.

Prior to settlement, the parties engaged in discovery and exchanged certain Collective Members' information and potential damages data. Additionally, the parties spent hundreds of hours reviewing large amounts of payroll and employee payment data for the Collective Members. This review revealed bona fide disputes as well as a method of ascertaining and calculating potential damages. In calculating potential damages, the parties examined the payroll records of all Collective Members during the applicable period. Collective Counsel also reviewed Daily Activity Logs reflecting on-call shifts worked by parole officers in the exemplar sample as well as for all on-call shifts worked by Named Plaintiffs during the limitations period. Considering the potential risk of non-recovery should DOC prevail on its defenses, Accordingly, the Settlement is fair, reasonable, and adequate.

2. **Serious Questions of Law and Fact Exist Regarding this Bona Fide Dispute that Put the Ultimate Outcome of the Litigation in Doubt.**

This inquiry requires the Court to determine whether the parties could reasonably conclude that serious questions of law and fact exist; this does not, however, require the Court to evaluate the actual merits of the case. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693-94 (D. Colo. 2006). In this case, Named Plaintiffs considered the risk of obtaining a much less favorable outcome after the time and expense of litigation. Among other things, the finder of fact could decide that the members of the Collective were "waiting to be engaged" and thus there was no compensable time. Additionally, DOC has also asserted various legal and factual defenses, including that the claims are barred by sovereign immunity. That issue is in dispute and the subject of hard-fought litigation in courts around the country. If successful, the Collective could receive nothing.

### 3. The Value of the Proposed Settlement Outweighs the Possibility of Future Relief after Protracted and Expensive Litigation.

"[A] cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas v. J.P. Morgan Chase & Co.*, CV 09-00261-SBA-EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (internal quotations omitted) (analyzing the issue under Fed. R. Civ. P. 23). Here, the proposed Settlement involves fair and reasonable payments in light of the risks of further litigation.

Under the terms of the proposed Settlement, DOC will pay the sum of $5,000,000 for full and final settlement of all claims, costs, and attorneys' fees. Collective Counsel estimate this amount represents 94.45% of the two-year unliquidated damages for the entire collective. This represents significant recovery in light of the inherent risks of litigation. This factor thus weighs in favor of approval.

### 4. Collective Counsel's Judgment is Entitled to Considerable Weight.

Collective counsel's judgment regarding the fairness of a collective settlement is "entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (internal quotations and citations omitted). Collective Counsel believe this Settlement is a fair and reasonable resolution of the claims, as it provides significant compensation to Collective Members in light of the risks of continued litigation. Named Plaintiffs and their counsel recommend that the Court grant preliminary approval of the Settlement.

### C. The Request for Fees Will Be Based on the Reasonableness Standard.

Counsel who obtain a common fund settlement are entitled to recover reasonable attorneys' fees paid from the fund. *See Gottlieb v. Bany,* 43 F.3d 474, 482 (10th Cir. 1994). Courts generally award attorneys' fees in common fund cases "based on a percentage of the common fund obtained for the benefit the class," thereby "proportionately spreading payment of attorney fees among the class members." *See Lucken Family L.P., LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 2650037, at *2-3 (D. Colo. June 30, 2010). "The Tenth Circuit favors the common fund

approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when [counsel] were retained on a contingent fee basis, as in this case." *Id.* (quotations omitted).

Any award of attorneys' fees to Collective Counsel is subject to Court approval under the Settlement. Prior to final approval, Plaintiff's counsel will submit their Motion for Approval of Attorneys' Fees and Expenses in which they will seek an award based on a percentage of the common fund.

### D. The Settlement Agreement Complies with the FLSA.

In addition to the foregoing, the "Court must determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power." *Baker*, 2014 WL 700096, at *2. Court evaluates the following factors: "(1) the presence of other similarly situated employees; (2) a likelihood that plaintiffs' circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA." *Id.* at *2 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)).

The Settlement effectuates the purposes of the FLSA. Because the Collective encompasses all community parole officers and community parole team leads who may have worked EMRT shifts, there are no similarly situated employees who will not have the opportunity to participate in the Settlement. The circumstances giving rise to the claims are unlikely to reoccur given that the EMRT program at issue in

13

this case was abolished effective December 31, 2020. Given that DOC is a state agency, the terms of the settlement are a matter of public record under the Colorado Open Records Act. The Settlement Agreement is attached to this Motion and is publicly available. Thus, this case would give notice to future plaintiffs of prior allegations of defendant's alleged improper conduct.

### III. THE COURT SHOULD CONDITIONALLY CERTIFY THE COLLECTIVE FOR PURPOSES OF SETTLEMENT.

The FLSA empowers employees to pursue claims on a collective basis on behalf of similarly situated employees. *See* 29 U.S.C. § 216(b). Certification under the FLSA occurs in two stages. *See Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). The first is a "notice stage" where courts use a "fairly lenient standard to determine whether plaintiffs are similarly situated for purposes of sending notice to putative class members." *Gassel v. Am. Pizza Partners, L.P.*, No. 14-CV-00291-PAB-NYW, 2015 WL 5244917, at *2 (D. Colo. Sept. 8, 2015).

First-stage certification requires nothing more than "substantial allegations" that the "putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. Where putative Collective Members are employed in similar positions, the allegation that defendant engaged in a pattern or practice of not complying with the FLSA is sufficient to meet this burden. *See Daugherty v. Encana Oil Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1133 (D. Colo. 2011). Once a court conditionally certifies a collective, putative members of the collective are given notice and the opportunity to "opt in" to the action. *See id.*

14

The parties stipulate to certification of the Collective for purposes of settlement. Additionally, as set forth in the sworn declarations attached to Plaintiffs' Motion for Collective Conditional Certification (Dkt. 50), the Collective performed the same material job duties, were subject to the same policies and conditions of work when working an EMRT shift. These allegations are sufficient to warrant conditional certification—especially when certification is being sought to facilitate settlement.

## IV. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

The proposed Notice and notice plan satisfy the requirements of due process. The proposed notice explains the nature of the action and the general terms of the Settlement (including the total settlement amount, the fact that the settlement amount will include attorneys' fees and costs subject to court approval, how settlement payments will be calculated, and the claims that will be released) and how the Collective Member may participate. The information provided ensures compliance with due process requirements is therefore reasonable. *See Villegas*, 2012 WL 5878390, at *8 (approving a notice containing the same categories of information).

## V. APPOINTMENT OF RUST CONSULTING AS CLAIMS ADMINISTRATOR

The parties hereby request that as part of its preliminary approval of the Settlement, the Court approve the appointment of Rust Consulting, a well-known and respected organization in the business of claims administration that charges reasonable rates within the industry for its services.

## VI. REQUEST TO APPOINT COLLECTIVE COUNSEL

Counsel from Leventhal Lewis Kuhn Taylor Swan PC and Finger Law, P.C. respectfully request that the Court appoint them as counsel for the Collective. Collective Counsel have spent the better part of two years engaged in extensive investigation, analysis, and discovery on behalf of the proposed Collective. They have significant experience in handling wage and hour class and collective actions, and they have significant knowledge of the FLSA. *See* Exhibit 3, Aff. of Andrew E. Swan.

WHEREFORE the parties jointly ask that the Court issue an order granting this motion, and taking the following actions:

1. Preliminarily approve the attached Settlement along with the dates for performance of the Settlement contained therein upon receipt of the fully executed Settlement;

2. Approve the Notice in the tendered form, attached, and find that the proposed method of disseminating the Notice meets the requisite legal standard and the requirements of due process and is the best notice practicable under the circumstances;

3. Establish the procedures and the deadline by which Collective Members may assert objections to the Settlement;

4. Set a deadline for a Motion for Final Approval of the Settlement;

5. Set a date for the final fairness hearing;

6. Appoint Rust as the Claims Administrator;

7. Appoint counsel from Leventhal Lewis Kuhn Taylor Swan PC and Finger Law, P.C. as Collective Counsel; and

8. Set a date that is approximately seven (7) days before the date for the Final Fairness Hearing by which the Parties must file their respective responses to any objections to the Settlement that are timely filed by Collective

Members on or before the objection deadline and the Plaintiffs' counsel's motion for attorney's fees and costs.

Respectfully submitted this 8th day of April, 2022

| | |
|---|---|
| LEVENTHAL \| LEWIS<br>KUHN TAYLOR SWAN PC<br><br>*/s/ Andrew E. Swan*<br>Paul F. Lewis<br>Michael D. Kuhn<br>Andrew E. Swan<br>Casey J. Leier<br>620 North Tejon Street, Suite 101<br>Colorado Springs, Colorado 80903<br>plewis@ll.law<br>mkuhn@ll.law<br>aswan@ll.law<br>cleier@ll.law | PHILIP J. WEISER<br>Attorney General<br><br>*/s/ Heather K. Kelly*<br>Heather K. Kelly<br>First Assistant Attorney General<br>Amanda C. Swartz<br>Assistant Attorney General<br>Colorado Department of Law<br>Civil Litigation and Employment Section<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 10th Floor<br>Denver, CO 80203<br>heather.kelly@coag.gov<br>amanda.swartz@coag.gov<br>*Attorneys for Defendant* |
| FINGER LAW P.C.<br><br>/s/ *William S. Finger*<br>William S. Finger<br>Finger Law, P.C.<br>bill@fingerlawpc.com<br>*Attorneys for Plaintiffs* | |